GREENEARTH® CLEANING, L.L.C., )
d/b/a GREENEARTH® CLEANING, )
                            )
        Plaintiff, )
                            )     Case No. _____
v. )
                            )
BENITO DRY CLEANERS LLC, d/b/a )
MAYFAIR CLEANERS, )
      Serve: Familia Benito, Inc. )
            9324 N. Charlotte Court )
            Kansas City, MO 64155 )
                            )
        Defendant. )

## PETITION

GreenEarth® Cleaning, L.L.C. d/b/a GreenEarth® Cleaning for its Petition against Benito Dry Cleaners LLC d/b/a Mayfair Cleaners, states and alleges as follows:

### Parties, Jurisdiction and Venue

1.       GreenEarth® Cleaning, L.L.C. (hereinafter referred to as "GreenEarth") is a Delaware Limited Liability Corporation, also doing business as GreenEarth® Cleaning, with its principal place of business at 51 W. 135th Street, Kansas City, Missouri 64145.

2.       GreenEarth is the assignee of all contracts, licenses, licensed products, licensed processes, patents, trademarks, tradenames and intellectual property rights and holds all rights, title and interest in and to said contracts, licenses, licensed products, licensed processes, patents, trademarks, tradenames and intellectual property which is the subject of GreenEarth's claims herein.

3.       Benito Dry Cleaners LLC d/b/a Mayfair Cleaners (hereinafter referred to as "Mayfair") is a Missouri limited liability company doing business in Kansas City, Missouri as

a drycleaning business, and a former licensee of GreenEarth's intellectual property, with a store location at: 9324 N. Charlotte Court, Kansas City, Missouri 64155.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this judicial district; because Mayfair is subject to personal jurisdiction in this judicial district; and the parties' agreements provide for venue in this Court.

5.     This Court has jurisdiction over the subject matter of the Petition pursuant to 15 U.S.C. § 1121; 28 U.S.C. § 1331; 28 U.S.C. § 1338; and 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over Mayfair because the parties entered into a contract in the State of Missouri, Mayfair is located in the State of Missouri, and Mayfair specifically consents in the parties' agreement to the jurisdiction of this Court.

### Common Allegations to all Claims

7.     Since at least August 24, 1999, GreenEarth has owned numerous patents for the use of liquid silicone as a drycleaning solvent.

8.     GreenEarth has registered its patents with the USPTO as summarized in the following table:

| Case Number | Patent Number | Country | Status |
|---|---|---|---|
| 43732 | 5,865,852 | U.S.A. | Granted |
| 43733 | 5,942,007 | U.S.A. | Granted |
| 43734 | 6,063,135 | U.S.A. | Granted |
| 43735 | 6,042,618 | U.S.A. | Granted |
| 43736 | 6,056,789 | U.S.A. | Granted |

2

| | | | |
|---|---|---|---|
| 43737 | 6,042,617 | U.S.A. | Granted |
| 43738 | 6,086,635 | U.S.A. | Granted |
| 43739 | 6,059,845 | U.S.A. | Granted |
| 57678 | 8,123,819 | U.S.A. | Granted |
| 521734 | | U.S.A. | Pending |
| 523949 | | U.S.A. | Pending |

9.      The patents ("Patents") are presently in force. A copy of the base patent, Patent Number 5,942,007 is attached hereto as **Exhibit 1.** The remaining patents are variations of Patent Number 5,942,007.

10.     Since at least as early at 1999, GreenEarth has used the trademark GREENEARTH with liquid silicone drycleaning services.

11.     GreenEarth has registered the GREENEARTH standard character trademark, its leaf and water droplet design mark and the IT'S GOOD FOR EVERYBODY standard character trademark with the USPTO as summarized in the following table:

| Trademark | Classes | Registration Number | Date of Registration |
|---|---|---|---|
| GREENEARTH | 35 and 37 | 2,413,095 | December 12, 2000 |
| DESIGN ONLY (GreenEarth - Leaf and Water Droplet) | 35 and 37 | 2,496,831 | October 9, 2001 |
| IT'S GOOD FOR EVERYBODY | 35 and 37 | 2,488,599 | September 11, 2001 |

11.     These trademarks (the "Marks") are alive, in good standing, unrevoked, are deemed incontestable, serving as *prima facie* evidence of GreenEarth's ownership of the

3

Registered Marks, their validity, and GreenEarth's exclusive right to use them in connection with the services identified therein.

12.     The Marks have been used for an extensive amount of time - for 15 years - and GreenEarth has expended substantial amounts of money promoting its Marks, further evidence that the Marks serve to identify GreenEarth as the source of services that bear the Marks.

## Mayfair's Infringing and Unfair Conduct

13.     On November 11, 2014, GreenEarth entered into a Letter of Understanding ("Contract") with Mayfair.  A copy of the Letter of Understanding is attached hereto as **Exhibit 2.**

14.     Pursuant to the Contract, GreenEarth licensed Mayfair to use its Intellectual Property in connection with the operation of Mayfair's dry cleaning businesses, and GreenEarth agreed to and did grant Mayfair certain rights in and to such Intellectual Property.

15.     Under the terms of the Contract, the Network Affiliate Rules ("Network Rules") became a part of the contract and were incorporated by reference therein into the Contract. A copy of the Network Affiliate Rules is attached hereto as **Exhibit  3.**

16.     According to Paragraph 2 of the Contract, GreenEarth granted to Mayfair a "limited term, non-transferable, and non-exclusive license to:"

a.  Utilize our Intellectual Property during the Term at your plant locations where dry cleaning is processed using the Licensed Processes, Licensed Equipment and Licensed Products in the number of dry cleaning machines and transfer recovery dryers as shown in Exhibit A enclosed with hit Letter of Understanding.

b.  Utilize our Intellectual Property during the Term at your dry store locations as shown in Exhibit A where dry cleaning has been processed exclusively in a plant

4

location using the Licensed Processes, Licensed Equipment and Licensed Products.

17.     Pursuant to Paragraph 4 of the Contract, Mayfair agreed to pay GreenEarth an "Affiliation Fee based upon the number of Drycleaning Machines that will be using our Licensed Processes or Licensed Products, and the number of Transfer Recovery Dryers used by said machines, determined in accordance with Exhibit B."

18.     Pursuant to Paragraph 6 of the Contract, "The term of [the] Letter of Understanding shall begin on the first day of the month following the date your first licensed machine begins operation and, unless terminated sooner (as permitted in the Network Rules), shall continue for an initial term of one (1) year."

19.     Pursuant to Paragraph 7 of the Contract, Mayfair agreed that it would "...follow and abide by the Network Rules and any changes to those Rules, as we may post from time to time on our website."

20.     Paragraph 1.12 of the Network Rules defines "Licensed Products" as "the chemicals, substances, and other material approved from time to time by Licensor for use with Licensed Equipment in Licensed Processes, including, without limitation, products covered by Intellectual Property, products listed on Exhibit C, and improvements, revisions, and enhancements thereof."

21.     Paragraph 1.13 of the Network Rules defines "Licensed Processes" as "dry cleaning processes and procedures disclosed in or covered by Intellectual Property that are used in Licensed Stores."

22.     Paragraph 1.15 of the Network Rules defines "Licensee" as "any establishment offering Drycleaning services and which has entered into a Letter of Understanding with Licensor." "A licensee is also called an "Affiliate."

5

23.     Paragraph 1.16 of the Network Rules defines "Licensor" as GreenEarth®
Cleaning L.L.C., a Delaware limited liability company."

24.     Paragraph 1.17 of the Network Rules defines "Marks" as "Licensor's registered
and unregistered trademarks, service marks, collective marks, certification marks, and
applications for registration thereof, together with all unregistered marks and trade dress
currently used by Licensor."

25.     Paragraph 1.18 of the Network Rules defines "Patent" as "Licensor's U.S. and
foreign issued patents, pending patent applications, and the technology disclosed therein, and
includes without limitation all continuations, divisions, continuations in part, reexaminations,
inter partes reviews, and reissues thereof."

26.     Paragraph 1.7 of the Network Rules defines "Intellectual Property" as
"Licensor's (i) Patents, (ii) Marks, (iii) Trade Secrets, Confidential Information, and Know-
How, as provided by Licensor to Licensee from time to time, including, without limitation,
information provided in the protected portion of Licensor's web site, and (iv) Copyrights
(including registered and unregistered claims of copyright)."

27.     Paragraph 2.2 of the Network Rules provides that "Each Licensee acknowledges
that (a) Licensee has read these Network Rules, and (b) Licensee has been given an
opportunity to confer with counsel and clarify any provision that Licensee did not
understand. Each Licensee understands and accepts the terms, conditions, and covenants
contained in these Network Rules as being reasonable and necessary to maintain Licensor's
goodwill in the Intellectual Property."

28.     Paragraph 5.1 provides that:

"Affiliate shall pay an Affiliation Fee based on: (i) the number of Drycleaning Machines in which Licensee may use the Licensed Processes or Licensed Products, plus (ii) the number of Transfer Recovery Dryers used by said Drycleaning Machines. The annual Affiliation Fee shall be payable in advance for a license period of twelve months duration and the amount of the annual Affiliation Fee shall be determined in accordance with Exhibit B. The annual Affiliation Fee for each Drycleaning Machine or Transfer Recovery Dryer shall be due on the first day of the month following the date each machine begins operating using the Licensed Processes. At such time as the Licensee increases, decrease, or otherwise changes the number and/or type of machines eligible for the Licensed Processes or the Licensed Products, or the number of Transfer Recovery Dryers, Licensee shall provide Licensor notice thereof, and, unless and until Licensor objects, Exhibit A shall be adjusted accordingly, effective as of the first day of the month following the month in which the said notice is given. Licensor may change the Per-Machine Fee or the Per-Transfer Recovery Dryer Fee used in calculating the Affiliation Fee no more often than annually by providing sixty (60) days' prior written notice to the Licensee."

29.     Paragraph 8.1 of the Network Rules provides that "Each Licensee's right to use the Marks is derived solely from the applicable Letter of Understanding and these Network Rules and is limited as provided herein. Any unauthorized use of the Marks by Licensee shall constitute a breach of these Rules and an infringement of the rights of Licensor in and to the Marks. All usage of the Marks by any Licensee and any goodwill established thereby shall inure to the exclusive benefit of Licensor. The Letter of Understanding and these Rules do not confer any goodwill or other interests in the Marks upon any Licensee (other than the right to use the Marks in connection with its use of the Licensed Processes and the Licensed Products) as presented in the Brand Identity Guide."

30.     Paragraph 8.2 of the Network Rules provides that "Each Licensee shall use the Marks only in connection with its use of the Licensed Processes or Licensed Products. All other actions with regard to the Marks are prohibited."

7

31.     Paragraph 10.1 of the Network Rules provides that "If any licensee ....(d) makes any unauthorized use or disclosure of any Confidential Information, makes any unauthorized use of the Marks, or makes any unauthorized use of the Licensed Processes or the Licensed Products; (e) fails to make any payment to Licensor when the same is due; or (f) otherwise violates these Network Rules or breaches the Letter of Understanding, then the Letter of Understanding shall be deemed terminated and the Licensee shall be deemed disaffiliated with the GreenEarth® Affiliate Network upon the expiration of the applicable cure period (as described below) without the need for any further action or notice, provided that the breach or violation is not cured during the applicable cure period to the satisfaction of Licensor."

32.     Paragraph 10.2 of the Network Rules provides that "For the events, breaches, and/or violations described in clauses (a), (b) and (f) of Section 10.1, the cure period  is thirty (30) days; for the events, breaches and/or violations described in clauses (c) and (e) of Section 10.1, the cure period is five (5) days....In each case in which there is a cure period, the applicable cure period commences upon the date when notice of the event, breach, and/or violation is provided ...."

33.     Paragraph 11.1 of the Network Rules provides that "Each Licensee shall pay to Licensor or its Associates within fifteen (15) days after the effective date of termination of the Letter of Understanding and disaffiliation from the GreenEarth Affiliate Network all amounts owed to Licensor or its Associates which have accrued, but which are then unpaid."

34.     Paragraph 11.2 provides that "After disaffiliation from the GreenEarth Affiliate Network, each Licensee shall:

8

(a) Not directly or indirectly at any time or in any manner identify Associates or any business as using the Licensed Processes, Licensed Equipment or the Licensed Products, or as a Licensee of, or as otherwise associated with Licensor, or use any of the Marks or any colorable imitation thereof in any manner or for any purpose, or utilize for any purpose any trade name, trade or service mark, or other commercial symbol that suggests or indicates a connection, affiliation, or association with Licensor or the GreenEarth® Affiliate Network;

(b) Remove all signs, emblems, decals, or other items containing any of the Marks and return to Licensor or destroy all forms and materials containing any Mark or otherwise identifying or relating to Licensor or the GreenEarth® Affiliate Network;

(c) Discontinue using all of the Licensor's Intellectual Property.

(d) Furnish to Licensor, within thirty (30) days after the effective date of disassociation, evidence satisfactory to Licensor of Licensee's compliance along with the Confirmation of Inactive Status document, with the provisions of this Section 11.2 and Section 11.3 hereof.

35. Paragraph 11.4 provides that "All obligations of Licensor and Licensee under Sections 4, 11.1 through 11.3 and 12.4 of the Network Rules shall continue, notwithstanding termination of the Letter of Understanding and/or disaffiliation from the GreenEarth Affiliate Network.

36. Following expiration of the initial one (1) year term, Mayfair continued to use GreenEarth's Intellectual Property up to and through the present time.

37. Mayfair failed to pay any license fees for the period from January 1, 2017, through December 31, 2017, and, as a result, was assessed a late fee.

38. On July 7, 2017, GreenEarth sent a cease and desist letter to Mayfair. A copy of the July 7, 2017, letter is attached hereto as **Exhibit 4.** In the letter, GreenEarth notified Mayfair in writing that it had no right to continue use of liquid silicone as a drycleaning solvent upon failure to pay fees due under the parties' agreements.

9

39.     On July 28, 2017, GreenEarth sent another letter to Mayfair demanding that Mayfair immediately cease and desist its use of the silicone dry cleaning process and all GreenEarth Marks, and pay the outstanding license and late fees of $2,750.00.  A copy of the July 28, 2017, letter is attached hereto as **Exhibit 5**.

40.     As of the filing of this lawsuit, Mayfair has failed and refused to respond to GreenEarth's July 7, 2017 or July 28, 2017, letters or to pay the outstanding license fees or to provide evidence that it has removed the GreenEarth silicone solvent.

41.     Based upon information and belief, Mayfair continues to use GreenEarth's Patents, licensed processes and licensed products in direct violation of the agreements and GreenEarth's intellectual property rights, to the damage and detriment of GreenEarth.

42.     As a result of Mayfair's continued use of GreenEarth's products and processes, licensing fees are due and payable, with interest, for 2017.  Minus credits for payments made, Mayfair owes to GreenEarth $2,750.00 in licensing fees and late fees plus all accrued and future interest.  As of the date of filing this complaint, Mayfair has failed and refused to pay the total amount due.  Mayfair failed to timely cure the default pursuant to paragraph 10.2 of the contracts, or to cure the default at any time prior to the filing of the lawsuit.

43.     Mayfair has failed to cease using GreenEarth's Patents as required by 11.2 of the Network Rules and has failed to pay to GreenEarth all amounts owed to GreenEarth as required by 11.1 of the Network Rules.

44.     Paragraph 13.5 of the Contract provides for attorneys' fees; accounting fees, expenses and costs to the prevailing party in an action brought to enforce the Contract.

## COUNT I
## BREACH OF CONTRACT

45.    GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 44 as though fully set forth herein.

46.    GreenEarth and Mayfair entered into a written licensing contract wherein GreenEarth licensed Mayfair to use its Marks, Patents, licensed processes and licensed products in connection with the operation of Mayfair's dry cleaning business, and GreenEarth agreed to and did grant Mayfair certain rights in and to those Marks, Patents, licensed processes and licensed products.

47.    GreenEarth has performed all of the obligations required of it under the Contract and Network Rules.

48.    Mayfair has failed to perform and has breached its obligations under the Contract and Network Rules, including, but not limited to, its failure to cease using GreenEarth's Marks, Patents, licensed processes and licensed products upon termination of the Contract and Network Rules and its failure to pay licensing fees for the time period during which it has continued to use GreenEarth's Marks, Patents, licensed processes and licensed products.

49.    GreenEarth has been injured and has incurred damages as the result of Mayfair's breach. The precise amount of damages on the licensing contract regarding Mayfair's "Annual Fee" obligation is $2,750.00 plus interest. The damages suffered by GreenEarth as a result of the breaches of the licensing agreement concerning the unlawful use of GreenEarth's intellectual property rights has not yet been ascertained.

50.    GreenEarth has been required to retain the law firm of Post Anderson Layton

11

Heffner, LLP and has incurred attorneys' fees and costs to pursue its rights and remedies in this lawsuit. Pursuant to Paragraph 13.5 of the Network Rules, the prevailing party shall be entitled to reimbursement of its costs and expenses, including reasonable accounting and legal fees, to the extent incurred with respect to the issues for which licensor prevails. GreenEarth seeks recovery of all attorneys' fees and costs incurred herein.

## COUNT II
## DECLARATORY RELIEF

51.     GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 50 as though fully set forth herein.

52.     On or about November 11, 2014, GreenEarth and Mayfair entered into the Contract and Network Rules wherein GreenEarth granted Mayfair a non- transferable, and non-exclusive license to:

   a. Utilize our Intellectual Property during the Term at your plant locations where dry cleaning is processed using the Licensed Processes, Licensed Equipment and Licensed Products in the number of dry cleaning machines and transfer recovery dryers as shown in Exhibit A enclosed with hit Letter of Understanding

   b. Utilize our Intellectual Property during the Term at your dry store locations as shown in Exhibit A where dry cleaning has been processed exclusively in a plant location using the Licensed Processes, Licensed Equipment and Licensed Products.

53.     Pursuant to the Contract all "Marks" and "Patents" as defined by the Contract are held by GreenEarth exclusively, as are all licensed processes and licensed products. Upon Disaffiliation under the Contract, specifically but not limited to, Paragraph 11.2, Mayfair shall:

   a. Not directly or indirectly at any time or in any manner identify Associates or any business as using the Licensed Processes, Licensed Equipment or the Licensed Products, or as a Licensee of, or as otherwise associated with Licensor, or use any of the Marks or any colorable imitation thereof in any

12

manner or for any purpose, or utilize for any purpose any trade name, trade or service mark, or other commercial symbol that suggests or indicates a connection, affiliation, or association with Licensor or the GreenEarth® Affiliate Network;

b. Remove all signs, emblems, decals, or other items containing any of the Marks and return to Licensor or destroy all forms and materials containing any Mark or otherwise identifying or relating to Licensor or the GreenEarth® Affiliate Network;

c. Discontinue using all of the Licensor's Intellectual Property;

d. Furnish to Licensor, within thirty (30) days after the effective date of disassociation, evidence satisfactory to Licensor of Licensee's compliance along with Confirmation of Inactive Status document, with the provisions of this Section 11.2 and Section 11.3 hereof.

54. On July 7, 2017, GreenEarth sent a cease and desist letter to Mayfair. A copy of the July 7, 2017, letter is attached hereto as **Exhibit 4.** In the letter, GreenEarth notified Mayfair in writing that it had no right to continue use of liquid silicone as a drycleaning solvent upon failure to pay fees due under the parties' agreements.

55. On July 28, 2017, GreenEarth sent another letter to Mayfair demanding that Mayfair immediately cease and desist its use of the silicone dry cleaning process and all GreenEarth Marks, and pay the outstanding license and late fees of $2,750.00. A copy of the July 28, 2017, letter is attached hereto as **Exhibit 5**.

56. Despite its disaffiliation, Marfair has failed and refused to comply with Paragraph 11.2 of the Network Rules. Specifically, based on information and belief, Mayfair continues to use its Intellectual Property in direct violation of the contract and GreenEarth's intellectual property rights.

57. An actual controversy has arisen and now exists between GreenEarth and Mayfair concerning their respective rights and duties in that GreenEarth contends that Mayfair continues to use, contrary to law and contract, GreenEarth's Intellectual Property

13

in direct violation of contract and termination of the licensing agreement.

58.      GreenEarth seeks a declaration of rights and duties arising under the agreements with respect to its ownership interest in the Intellectual Property.

## COUNT III
## PATENT INFRINGEMENT

59.      GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 58 as though fully set forth herein.

60.      On August 24, 1999, U.S. Patent No. 5,942,007 (the "5,942,007 Patent") was duly and legally issued in the name of GreenEarth Cleaning, LLP. A copy is attached hereto as **Exhibit 1.**

61.      The 5,942,007 Patent is presently in force.

62.      The 5,942,007 Patent covers the use of liquid silicone as a solvent in dry cleaning using steps 1 through 7.

63.      Additional patents containing variations of the 5,942,007 Patent have been duly and legally issued to GreenEarth Cleaning, LLP, as set forth in Paragraph No. 8 herein.

64.      Mayfair has used liquid silicone as a dry cleaning solvent since obtaining a license from GreenEarth in 2014.

65.      Mayfair is no longer a licensee of GreenEarth and, therefore, is no longer entitled to use GreenEarth's patented process for the use of liquid silicone as a dry cleaning solvent.

66.      Upon information and belief, Mayfair has infringed one or more claims of the Patents by continuing to utilize liquid silicone as a dry cleaning solvent and completing steps 1 through 7 of the 5,942,007 Patent, as well as the registered variations on the 5,942,007 Patent.

14

67. If Mayfair's infringement of the Patents is found to constitute an exceptional case then GreenEarth is entitled to recover its attorneys' fees.

68. Upon information and belief, Mayfair intends to continue in its infringing acts, unless restrained by this Court.

69. Mayfair's acts have damaged and will continue to damage GreenEarth, and GreenEarth has no adequate remedy at law.

## COUNT IV
## TRADEMARK INFRINGEMENT

70. GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 69 as though fully set forth herein.

71. GreenEarth owns the Marks.

72. GreenEarth has used the Marks continuously and consistently for an extended period of time to advertise, promote, and display its goods, services and products. GreenEarth's use of the Marks in interstate commerce has indelibly impressed on the consuming public's minds the impression that the Marks identify the processes and services of GreenEarth. Thus, the relevant consumers have come to associate the Marks with GreenEarth.

73. At all material times herein, Mayfair's rights to utilize GreenEarth's trademarks, processes and products arose exclusively from the licensing contracts entered into between GreenEarth and Mayfair, which granted Mayfair a non- transferable, and non-exclusive license to:

      a. Utilize our Intellectual Property during the Term at your plant locations where dry cleaning is processed using the Licensed Processes, Licensed Equipment and Licensed Products in the number of dry cleaning machines and transfer recovery dryers as shown in Exhibit A enclosed with this Letter of Understanding;

15

b. Utilize our Intellectual Property during the Term at your dry store locations as shown in Exhibit A where dry cleaning has been processed exclusively in a plant location using the Licensed Processes, Licensed Equipment and Licensed Products.

74. Pursuant to Paragraph 1.17 of the Affiliate Network Rules, the term "Marks" is defined as the "registered and unregistered trademarks, service marks, collective marks, certification marks, and applications for registration thereof, together with all unregistered marks and trade dress currently used by Licensor."

75. Pursuant to Paragraph 1.18 of the Affiliate Network Rules, the term "Patent" is defined as "Licensor's U.S. and foreign issued patents, pending patent applications, and the technology disclosed therein, and includes without limitation all continuations, divisions, continuations in part, reexaminations, inter partes reviews, and reissues thereof."

76. On July 28, 2017, GreenEarth gave Mayfair notice that its account was delinquent with regard to its Affiliation Fees and that it was in breach of the Letter of Understanding and Network Rules.

77. As a result of Mayfair's failure to cure its default under the Letter of Understanding and Network Rules, Mayfair is no longer an affiliate of the GreenEarth Affiliate Network.

78. Despite its disaffiliation, Mayfair has failed and refused to comply with Paragraph 11.2 of the Network Rules. Specifically, based on information and belief, Mayfair continues to use all Marks, Patents, Licensed Products and Processes in direct violation of the contract and GreenEarth's intellectual property rights.

79. At all relevant times Mayfair continues to use all Marks, Patents, Licensed Products and Processes in its advertising; packaging; storefront and store location advertising; and continues to use the liquid solvent processing in direct violation of the contracts, and

16

GreenEarth's registered Marks and Patents.

80.     Mayfair's continued use of the Marks to identify Mayfair's services constitutes use of a copy and colorable imitation of GreenEarth's Marks and is likely to cause confusion or mistake, or to deceive the purchasing public into believing that the services of Mayfair emanate from GreenEarth or that there is some connection, sponsorship, or affiliation between the services of GreenEarth and Mayfair, all of which are contrary to fact.

81.     GreenEarth has no control over the nature and quality of the services of Mayfair. Any failure, neglect, or default by Mayfair in providing services will reflect adversely on GreenEarth as the believed source or origin thereof, which will hinder GreenEarth's effort to continue to protect its outstanding reputation in the industry and subject GreenEarth to loss of sales of goods and loss of the considerable expenditures it has made to promote its goods in association with the Marks, all to the irreparable harm of GreenEarth.

82.     Mayfair's conduct constitutes an infringement of GreenEarth's registered Marks and is actionable under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

83.     Upon information and belief, Mayfair has deliberately and willfully infringed GreenEarth's Marks in violation of 15 U.S.C. § 1114, and GreenEarth has been and will continue to be irreparably harmed by such infringement unless this Court enjoins Mayfair from its continuing infringement pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116.

84.     Upon information and belief, Mayfair is willfully infringing GreenEarth's Marks. As a result of Mayfair's deliberate and willful infringement of GreenEarth's Marks, GreenEarth is entitled to damages, Mayfair's profits, attorneys' fees and costs, and any and all other relief authorized by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT V
## FALSE DESIGNATION OF ORIGIN
## AND FALSE ADVERTISING (15 U.S.C. § 1125(a))

85.    GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 84 as though fully set forth herein.

86.    Mayfair's promotion, advertising, distribution, sale and/or offering for sale of its services, together with its use of GreenEarth's Marks is intended, and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the services, and is intended, and is likely to cause such parties to believe in error that the services have been authorized, sponsored, approved, endorsed or licensed by GreenEarth, or that Mayfair is in some way affiliated with GreenEarth.

87.    The foregoing acts of Mayfair constitute a false designation of origin, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

88.    Upon information and belief, Mayfair has made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

89.    Upon information and belief, Mayfair intends to continue its infringing acts, unless restrained by this Court.

90.    Mayfair's acts have damaged and will continue to damage GreenEarth, and GreenEarth has no adequate remedy at law.

## COUNT VI
## TRADEMARK DILUTION (15 U.S.C. § 1125(c))

91.    GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 90 as though fully set forth herein.

18

92.     GreenEarth's Marks are strong and distinctive marks that have been in use for many years and have achieved enormous and widespread public recognition.

93.     GreenEarth's Marks are famous within the meaning of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

94.     Mayfair's offering of services using GreenEarth's Marks without authorization from GreenEarth is diluting the distinctive quality of GreenEarth's Marks and decreasing the capacity of such marks to identify and distinguish GreenEarth's processes.

95.     Mayfair has intentionally and willfully diluted the distinctive quality of the famous GreenEarth Marks in violation of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

96.     Upon information and belief, Mayfair has made and will continue to make substantial profits and/or gain to which it is not in law or equity entitled.

97.     Upon information and belief, Mayfair intends to continue its infringing acts, unless restrained by this Court.

98.     Mayfair's acts have damaged and will continue to damage GreenEarth, and GreenEarth has no adequate remedy at law.

## COUNT VII
## COMMON LAW TRADEMARK INFRINGEMENT

99.     GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 98 as though fully set forth herein.

100.    At all material times herein, Mayfair's rights to utilize GreenEarth's Trademarks, Processes and Products arose exclusively from the licensing contracts entered into between GreenEarth and Mayfair. On November 11, 2014, GreenEarth and Mayfair entered into

19

agreements wherein Mayfair was granted, pursuant to contract, a non- transferable, and non-exclusive license to:

      a. Utilize our Intellectual Property during the Term at your plant locations where dry cleaning is processed using the Licensed Processes, Licensed Equipment and Licensed Products in the number of dry cleaning machines and transfer recovery dryers as shown in Exhibit A enclosed with hit Letter of Understanding;

      b. Utilize our Intellectual Property during the Term at your dry store locations as shown in Exhibit A where dry cleaning has been processed exclusively in a plant location using the Licensed Processes, Licensed Equipment and Licensed Products.

      101.    Pursuant to Paragraph 1.17 of the Affiliate Network Rules, the term "Marks" is defined as the "registered and unregistered trademarks, service marks, collective marks, certification marks, and applications for registration thereof, together with all unregistered marks and trade dress currently used by Licensor."

      102.    At all relevant times herein, the trademarks are registered trademarks with the U.S. Patent and Trademark Office. They were issued on December 12, 2000, September 11, 2001 and October 9, 2001 and assigned registration numbers 2,413,095, 2,488,599 and 2,496,831. They have achieved uncontestable status and were reissued after the first ten (10) years.

      103.    On July 28, 2017, GreenEarth gave Mayfair notice that its account was delinquent with regard to its Affiliation Fees and that it was in breach of the Letter of Understanding and Network Rules.

      104.    GreenEarth has not transferred any interest in the Marks, Patents, Products and Processes to Mayfair pursuant to the Contract.

      105.    Upon information and belief, Mayfair has used in commerce the Marks and/or a reproduction, counterfeit, copy or colorable imitation of the Marks in connection with the sale,

offering for sale, distribution, or advertising of goods in direct violation of the agreements, the termination of the Letter of Understanding, and clarification of rights, which use is likely to cause confusion or to cause mistake, or to deceive.

106.    The Marks, Patents, and Processes have acquired a secondary meaning in the market.

107.    Based on information and belief, Mayfair, in connection with its services, has used the words in commerce as follows:

      a.  GreenEarth® Cleaning Registered Logos;

      b.  GreenEarth® Cleaning System;

      c.  GreenEarth® Cleaning;

      d.  Greenearthcleaning.com; and

      e.  It's good for everybody.

108.    Additionally, based on information and belief, Mayfair continues to use the liquid solvent products and processes in commerce in connection with the sale, offering for sale, distribution, or advertising of goods and services provided to its customers in direct violation of the agreements and the termination of the agreements.

109.    Such representations, made without the consent of GreenEarth, and in direct violation of the agreements, registered Marks, Patents, Products and Processes, are false or misleading representations of fact which are likely to cause confusion or to cause mistake or to deceive as to the affiliation of Mayfair with GreenEarth; the quality of  GreenEarth's  Marks, Patents, Products and Processes; the good will of GreenEarth's Marks, Patents, Products and Processes; and the commercial activities of the true owner, GreenEarth. Such statements have actually deceived members of the audience or have a tendency to deceive a substantial segment

Case 4:17-cv-00846-BCW   Document 1   Filed 10/09/17   Page 21 of 29

of the audience:

    a. The deceptions are material, in that they have influenced and are likely to influence the purchasing decision;

    b. Mayfair has caused its false statements to enter interstate commerce;

    c. GreenEarth has been injured and/or is likely to be injured as a result of the false statements including but not limited to suffering a direct diversion of sales, by a lessening of the good will associated with GreenEarth's business, by a lessening of the quality attributed to its products and/or diluting the rights and privileges of other licenses; and

    d. Mayfair's use of GreenEarth trademarks harms GreenEarth's ability to effectively protect its Marks, Patents, Products and Processes for itself and its licensees.

110. Mayfair's acts have damaged and will continue to damage GreenEarth.

## COUNT VIII
## UNFAIR COMPETITION, COMMON LAW AND RSMo. § 417.061

111. GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 110 as though fully set forth herein.

112. At all material times herein, Mayfair's rights to utilize GreenEarth's Trademarks, Processes and Products arose exclusively from the licensing contracts entered into between GreenEarth and Mayfair. On November 11, 2014, GreenEarth and Mayfair entered into agreements wherein Mayfair was granted, pursuant to contract, a non- transferable, and non-exclusive license to:

    a. Utilize our Intellectual Property during the Term at your plant locations where dry cleaning is processed using the Licensed Processes, Licensed Equipment and Licensed Products in the number of dry cleaning machines and transfer recovery dryers as shown in Exhibit A enclosed with hit Letter of Understanding;

    b. Utilize our Intellectual Property during the Term at your dry store locations as shown in Exhibit A where dry cleaning has been processed exclusively in a plant location using the Licensed Processes, Licensed Equipment and Licensed Products.

22

113.    Pursuant to Paragraph 1.17 of the Affiliate Network Rules, the term "Marks" is defined as the "registered and unregistered trademarks, service marks, collective marks, certification marks, and applications for registration thereof, together with all unregistered marks and trade dress currently used by Licensor."

114.    At all relevant times herein, the trademarks are registered trademarks with the U.S. Patent and Trademark Office. They were issued on December 12, 2000, September 11, 2001 and October 9, 2001 and assigned registration numbers 2,413,095, 2,488,599 and 2,496,831. They have achieved uncontestable status and were reissued after the first ten (10) years.

115.    On July 28, 2017, GreenEarth gave Mayfair notice that its account was delinquent with regard to its Affiliation Fees and that it was in breach of the Letter of Understanding and Network Rules.

116.    GreenEarth has not transferred any interest in the Marks, Patents, Products and Processes to Mayfair pursuant to the Contract.

117.    Upon information and belief, Mayfair has used in commerce the Marks and/or a reproduction, counterfeit, copy or colorable imitation of the Marks in connection with the sale, offering for sale, distribution, or advertising of goods in direct violation of the agreements, the termination of the Letter of Understanding, and clarification of rights, which use is likely to cause confusion or to cause mistake, or to deceive.

118.    The Marks, Patents, and Processes have acquired a secondary meaning in the market.

119.    Based on information and belief, Mayfair, in connection with its services, has used the words in commerce as follows:

    a.  GreenEarth® Cleaning Registered Logos;

    b.  GreenEarth® Cleaning System;

    c.  GreenEarth® Cleaning;

    d.  Greenearthcleaning.com; and

    e.  It's good for everybody.

120.    Additionally, based on information and belief, Mayfair continues to use the liquid solvent products and processes in commerce in connection with the sale, offering for sale, distribution, or advertising of goods and services provided to its customers in direct violation of the agreements and the termination of the agreements.

121.    Such representations, made without the consent of GreenEarth, and in direct violation of the agreements, registered Marks, Patents, Products and Processes, are false or misleading representations of fact which are likely to cause confusion or to cause mistake or to deceive as to the affiliation of Mayfair with GreenEarth; the quality of GreenEarth's Marks, Patents, Products and Processes; the good will of GreenEarth's Marks, Patents, Products and Processes; and the commercial activities of the true owner, GreenEarth. Such statements have actually deceived members of the audience or have a tendency to deceive a substantial segment of the audience:

    a.  The deceptions are material, in that they have influenced and are likely to influence the purchasing decision;

    b.  Mayfair has caused its false statements to enter interstate commerce;

    c.  GreenEarth has been injured and/or is likely to be injured as a result of the false statements including but not limited to suffering a direct diversion of sales, by a lessening of the good will associated with GreenEarth's business, by a lessening of the quality attributed to its products and/or diluting the rights and privileges of other licenses; and

    d.  Mayfair's use of GreenEarth trademarks harms GreenEarth's ability to

24

effectively protect its Marks, Patents, Products and Processes for itself and its licensees.

122.   Upon information and belief, Mayfair has made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

123.   Upon information and belief, Mayfair intends to continue its infringing acts, unless restrained by this Court.

124.   Mayfair's acts have damaged and will continue to damage GreenEarth, and GreenEarth has no adequate remedy at law.

## COUNT IX
## TRADEMARK DILUTION, COMMON LAW AND RSMo. § 417.061

125.   GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 124 as though fully set forth herein.

126.   At all material times herein, Mayfair's rights to utilize GreenEarth's Marks, Processes and Products arose exclusively from the licensing contracts entered into between GreenEarth and Mayfair. On November 11, 2014, GreenEarth and Mayfair entered into agreements wherein Mayfair was granted, pursuant to contract, a non- transferable, and non-exclusive license to:

    a. Utilize our Intellectual Property during the Term at your plant locations where dry cleaning is processed using the Licensed Processes, Licensed Equipment and Licensed Products in the number of dry cleaning machines and transfer recovery dryers as shown in Exhibit A enclosed with hit Letter of Understanding;

    b. Utilize our Intellectual Property during the Term at your dry store locations as shown in Exhibit A where dry cleaning has been processed exclusively in a plant location using the Licensed Processes, Licensed Equipment and Licensed Products.

127.   Pursuant to Paragraph 1.17 of the Affiliate Network Rules, the term "Marks" is defined as the "registered and unregistered trademarks, service marks, collective marks,

25

certification marks, and applications for registration thereof, together with all unregistered marks and trade dress currently used by Licensor."

128.    At all relevant times herein, the trademarks are registered trademarks with the U.S. Patent and Trademark Office. They were issued on December 12, 2000, September 11, 2001 and October 9, 2001 and assigned registration numbers 2,413,095, 2,488,599 and 2,496,831. They have achieved uncontestable status and were reissued after the first ten (10) years.

129.    The GreenEarth Marks are strong and distinctive marks that have been in use for many years and have achieved enormous and widespread public recognition.

130.    Through prominent, long and continuous use in commerce, including commerce within the State of Missouri, the GreenEarth Marks have become and continue to be famous and distinctive.

131.    On July 28, 2017, GreenEarth gave Mayfair notice that its account was delinquent with regard to its Affiliation Fees and that it was in breach of the Letter of Understanding and Network Rules.

132.    GreenEarth has not transferred any interest in the Marks, Patents, Products and Processes to Mayfair pursuant to the Contract.

133.    The Marks, Patents, and Processes have acquired a secondary meaning in the market.

134.    GreenEarth's Marks are particularly strong in that GreenEarth owns the only patents for the use of liquid silicone as a drycleaning solvent in the entire world and has over 1,700 machines licensed throughout the world.

135.    Based on information and belief, Mayfair, in connection with its services, has

used and continues to use the words in commerce as follows:

      a.   GreenEarth® Cleaning Registered Logos;

      b.   GreenEarth® Cleaning System;

      c.   GreenEarth® Cleaning;

      d.   Greenearthcleaning.com; and

      e.   It's good for everybody.

136.    Additionally, based on information and belief, Mayfair continues to use the liquid solvent products and processes in commerce in connection with the sale, offering for sale, distribution, or advertising of goods and services provided to its customers in direct violation of the agreements and the termination of the agreements.

137.    Upon information and belief, Mayfair has used in commerce the Marks and/or a reproduction, counterfeit, copy or colorable imitation of the Marks in connection with the sale, offering for sale, distribution, or advertising of goods and services in direct violation of the agreements and the termination of the agreements.

138.    Mayfair continued use of GreenEarth's Marks creates a likelihood of dilution of the distinctive quality of GreenEarth's Marks.

139.    Upon information and belief, Mayfair has made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

140.    Upon information and belief, Mayfair intends to continue its infringing acts, unless restrained by this Court.

141.    Mayfair acts have damaged and will continue to damage GreenEarth, and GreenEarth has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, GreenEarth prays for judgment and relief against Mayfair as follows:

(a) Finding that: (i) Mayfair has breached the parties' Contract; (ii) Mayfair has violated 35 U.S.C. § 271; (iii) Mayfair has violated Section 35 of the Lanham Act (15 U.S.C. § 1114), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); (iv) Mayfair has diluted the GreenEarth Marks in violation of Missouri common law and RSMo. § 417.061; (v) Mayfair has engaged in trademark infringement under the common law of Missouri; (vi) Mayfair has engaged in unfair competition in violation of Missouri common law and RSMo. § 417.061;

(b) Declaring, without limitation, that:

  (i) GreenEarth is the exclusive owner of the Licensed Processes and the Marks, Patents, Licensed Products; and

  (ii) Mayfair has no present or future right to use of the Marks, Patents, Licensed Products and Licensed Processes;

(c) An order that Mayfair and those in active concert or participation with Mayfair be permanently enjoined from infringing the Patents and from infringing the Marks, from unfair competition with GreenEarth; and from falsely designating the origin of GreenEarth's services;

(d) An award of $2,750.00 in license fees and late fees, plus interest for Mayfair's breach of contract;

(e) An award and accounting of Mayfair's profits, and any damages sustained by GreenEarth, believed to be in excess of $100,000.00;

28

(f)     An award of any applicable penalties;

(g)     Pursuant to 35 U.S.C. § 284 and/or 15 U.S.C. § 1117, an award increasing damages up to three times the amount found or assessed due to the willful and deliberate nature of the infringement;

(h)     Pursuant to the parties' contract, 35 U.S.C. § 285 and/or 15 U.S.C. § 1117, an award of reasonable attorneys' fees;

(i)     An award of pre- and post-judgment interest; and

(j)     Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

GreenEarth hereby demands a trial by jury on all matters so triable.

**POST ANDERSON LAYTON HEFFNER, LLP**

_____/s/Matthew L. Heffner_____

By:     Matthew L. Heffner, MO #57251
        12980 Metcalf Avenue, Suite 180
        Overland Park, Kansas 66213
        Telephone:  (913) 341-7800
        Telecopier: (913) 341-7804
        *Attorney for Plaintiff*